## KINGMAN & a. v. JUDGE OF PROBATE.

Section 11 of chapter 163 of the Revised Statutes, providing that where the creditor and administrator of an estate shall agree to submit a disputed claim to referees, a rule therefor shall be granted, is imperative upon the judge of probate to appoint referees, and the act of December 5th, 1844, does not change it.

Where an appeal is taken from the decision of a commissioner on an estate, allowing or disallowing a claim, whether it be taken by a creditor, heir, or the administrator, and the administrator and creditor whose the claim is, shall agree to refer the same, it is the duty of the judge of probate to appoint referees, first notifying all who are interested in the estate, that they may be heard in regard to the selection of the referees to be appointed.

APPEAL from the decree of the judge of probate of this county, refusing to grant a rule of reference upon the claim

of Charles H. Kingman, a creditor of the estate of John Kingman, late of Durham, deceased.

By the agreement of the parties and from the appeal papers, the following facts were made to appear.

John Kingman died intestate on the 31st day of May, 1854, and on the 6th of June following, his son, John W. Kingman was appointed administrator on his estate.

The inventory of his estate was as follows:

| | |
|---|---:|
| Stock in banks and Boston and Maine Railroad, | $12,738 00 |
| Promissory notes,......................... | 400 00 |
| Other personal property,.................... | 1,561 75 |
| Real estate,............................... | 10,420 00 |
| | 25,119 75 |

On the 5th day of July, 1854, the inventory was returned, and the estate decreed to be administered in the insolvent course, and Richard Kimball, Esquire, was appointed commissioner thereon.

On the 24th day of May, 1854, John Kingman, the deceased, executed an unconditional bond to his son, Charles H. Kingman, for the payment of $12,000, on demand, and another bond of the same tenor and amount to his other son, John W. Kingman, the administrator. No consideration was expressed in said bonds, and they were without any valuable or money consideration. There are no claims of any consequence against said estate, except said bonds.

At a court of probate, holden at Dover, on the 6th day of March, 1855, the commissioner on the estate made his report, which was duly accepted by the judge; and the claim of said Charles H. Kingman was allowed in full by the commissioner. From this allowance, the administrator claimed an appeal, and filed his petition in the probate office on the 9th day of said March, notice of which was served on said Charles H. Kingman, the creditor, on the 16th of the same month.

Afterwards, on the second day of April, 1855, Mary P. Kingman, the widow of the deceased, and John K. Burbank, one of the heirs at law of the estate, and Joseph W. Coe, who claims to be a creditor of the estate, each filed their several petitions in the probate office, also severally claiming an appeal, in their own names, from the decision of the commissioner, which several petitions were considered by the judge of probate, at a court of probate holden at Farmington, on the 3d day of said April, and each of said appeals were then allowed, and notices to the creditor, Charles H. Kingman, to file his declaration on his said claim, were ordered in each case.

Whereupon said Charles H. Kingman, the creditor, and John W. Kingman, the administrator, on said third day of April, agreed, in writing, before said judge of probate, to submit the disputed claim to three referees, by them agreed upon, and prayed the judge to issue a rule of reference to said referees, and they duly filed their petition and agreement accordingly.

Upon this petiton and agreement the judge of probate made the following decree:

" State of New Hampshire.

Strafford, ss.    At a court of probate, holden at Farmington, on the third day of April, 1855.

The foregoing agreement and petition having this day been presented, the parties thereto having been fully heard, and said Mary P. Kingman and said David Burbank having been heard by counsel, in opposition to said reference, upon due consideration, I do refuse to grant said rule, and do decree that the prayer of said petition be and it hereby is disallowed."

From this decree the said Charles H. Kingman and John W. Kingman appealed to this court, and set forth and assigned their reasons for the appeal as follows:

1. Because by the 12th section of chapter 172 of the Compiled Statutes, it is made the duty of the judge of probate, in such cases, to grant the rule prayed for, and the said judge has no right or power to refuse the same.

2. Because it is the purpose of said statute to create a tribunal, which the parties specified may avail themselves of, if they can agree, for the final decision of such cases, and thereby promote and insure the speedy settlement of estates.

3. Because, by refusing said rule, four several appeals having been taken from the decision of the commissioner allowing said claim, the said creditor is compelled by the statute to file his declaration in each of them, and serve notice thereof on the administrator, and enter his actions at the next term of the court of common pleas, thereby creating four suits in the same court, on the same cause of action and between the same parties.

4. Because said estate is driven into great expense by reason of said refusal, and its settlement much delayed, and said creditor is put to unusual and unnecessary expense, and the payment of his claim deferred, and much litigation and trouble entailed upon both parties, without benefit or protection to the interests of others.

*Christie & Kingman,* for the appellants.

The statute, giving the right to refer, was originally passed in 1791, and with very slight modifications, has been the law of the State ever since.

In 1844, an act was passed giving the right of appeal from the decision of a commissioner of an insolvent estate, to " any heir or creditor," which, before that time, was confined to the administrator and the creditor on whose claim the decision was made.

This act was " in addition to and in amendment of the 3d section of chapter 163 of the Revised Statutes," leaving the rest of the chapter as it stood before.

It is contended that the act of 1844 is in conflict with, and necessarily abrogates the 11th section of chapter 163, which gives the right to refer.

Before the amendment of 1844, the administrator and the claimant only had the right to appeal; but by the 8th section of chapter 163, " any creditor may be admitted to defend such action, [where an appeal has been taken,] either with or without the administrator." The amendment of 1844, was, therefore, only intended to apply where neither the administrator nor the creditor would claim an appeal. If either did appeal, the right of every " creditor," at least, to make defence was, in effect, the same as it is under the present statute.

Yet the right to refer, in case either the administrator or the claimant appealed, was distinctly conferred, (notwithstanding the creditor's right to defend,) provided the parties could agree. If they did agree to refer, " the judge shall issue a rule therefor;" and the statute is the same since the amendment of 1844.

We contend that the effect of the statute, as it now stands, is this: After a claim has been passed upon by a commissioner of an insolvent estate, any party interested in the estate may appeal; the creditor must then bring his suit at law, in the common pleas, against the administrator. But if the claimant and the administrator can agree to refer, the question shall be transferred to the referees, and the rights of all parties be finally adjudicated by that tribunal.

This construction of the statute is much strengthened by the analogous provision for the adjudication of the private claim of the administrator of an insolvent estate. In that case, unless all the parties agree, in writing, to submit the claim to the decision of the judge of probate, it is made the duty of the judge to issue a rule to one or more referees, whose report, when accepted, shall be conclusive on all the parties ; no matter how many parties there be, or on what different grounds they may severally object. And this provision is

approvingly considered in the case of *Abbe* v. *Narcott*, 8 N. H. Rep. 51. In that case, it is said, "had any heir or creditor appeared to contest the claim before the judge, it must have been referred; and, in such case, undoubtedly, notice should have been given to such parties of the hearing before the referee."

Can any thing more be required in the case before the court? Does not this case present the precise state of facts which, in *Abbe* v. *Narcott*, were held would be conclusive on all parties?

But it is contended that, under the statute as it now stands, every creditor and every heir of an insolvent estate, may claim his separate appeal, and thereby compel the creditor, whose claim is disputed, to bring his action at law against the administrator on each appeal, thus causing as many suits on the same claim as there may be heirs and creditors to an estate. And in this case there are four several appeals and four several declarations filed, on the same claim, by the same plaintiff, in the same court, and against the same defendant.

Suppose the plaintiff recovers in such suit, is he to have four separate judgments? Suppose he recovers in one suit, and is defeated in the other three, is not his judgment in the one case to be added to the list of claims by the judge of probate?

Can it possible that the statute means any thing more than that every creditor and every heir who objects to the decision of the commissioner, shall have the right to be heard in the defence of the estate against the claim? If this be so, we submit that there is the same reason for disposing of the whole matter by a reference, that exists in the case of the adjudication of the administrator's private claim, to wit, the speedy settlement of estates.

But we contend that, by the statute as it stands, the right to refer, in the present case, is unquestionable, and the judge should have issued the rule prayed for.

*Perley* and *Doe*, for heirs and creditors.

1. The provision that a rule shall be granted is merely descriptive, and not imperative and peremptory.

2. Courts are not obliged to allow proceedings which are collusive and fraudulent between the parties, and designed only to affect the rights of others not parties. The administrator is not dissatisfied with the allowance of the claim, and his appeal may be dismissed.

3. The agreement and petition were to refer the claim to three persons, chosen by the appellants. By the statute of July, 2, 1822, (Laws 1830, p. 363,) the referees were to be nominated and appointed by the judge of probate. The Revised Statutes do not expressly provide who shall choose the referees; but the variation is merely in phraseology, and shows no intention to change the law. The main object of the revision of the statutes was not so much to change the substance of existing laws, as to methodize and simplify them. *Crowell* v. *Clough*, 3 Foster's Rep. 210.

4. The appellants included, or attempted to include, our appeals in their agreement to refer, and the statute only authorizes them to refer their own appeals.

5. If the reference would stop our appeals, they would equally be stopped by the administrator discontinuing his appeal or being defaulted. If our appeals are thus in his power, the statute of 1844 is a nullity.

6. If the reference could not affect our appeals, it would be a useless ceremony, and the administrator should not be allowed to burden the estate with unnecessary cost.

EASTMAN, J. The first section of chapter 163 of the Revised Statutes provides that " any creditor, dissatisfied with the decision of the commissioners upon any claim by him exhibited, may appeal therefrom, by petition to the judge, filed in the probate office within thirty days after the acceptance of their report, and shall file therewith a declaration in proper form upon his claim."

Section third of the same chapter provides that " if the administrator is dissatisfied with the allowance of any claim, he may appeal therefrom by petition to the judge, filed in the probate office within thirty days after the acceptance of the report; and if the creditor, or his agent or attorney, is not present to take notice thereof, the judge shall order notice thereof to be given to the creditor."

The other sections of the chapter, from the first to the eleventh, provide for the manner of giving notice, in case an appeal is taken, and they regulate the pleadings and proceedings in the common pleas, the trials, and the effect of the judgments.

The eleventh section is as follows : " If the creditor and administrator, in either of the cases aforesaid, shall, within said thirty days, agree before the judge to submit the disputed claim to referees, a rule therefor shall be granted, and their report being accepted by the judge, shall be final."

It is upon this eleventh section that the appellants found their appeal and insist upon the right to have the claim in controversy referred to referees; and were there no other statute regulations in regard to appeals from commissioners, we think that the claim would have to be referred. The statute is imperative in its terms that " the rule therefor shall be granted." The phraseology is similar to that relative to the private claims of administrators, which provides that if the claim is contested by any heir or creditor, unless the parties shall agree in writing that the judge of probate shall decide the claim, " he shall refer the same to one or more referees." And upon this latter statute, *Parker. J.,* in *Abbe* v. *Norcott,* 8 N. H. Rep. 53, remarks : " Had any heir or creditor appeared to contest the claim before the judge, it *must have been referred."*

By the act of December 5th, 1844, entitled " An act relating to appeals from commissioners, in amendment of and in addition to section 3 of chapter 163 of the Revised Statutes of New Hampshire," it is provided " that if any heir or

creditor to an estate is dissatisfied with the allowance of any claim, he may appeal therefrom in the same manner the administrator is now authorized to appeal, first filing in the probate office a bond, to the satisfaction of the judge, conditioned to indemnify the estate from any cost or damage that may accrue in the prosecution of said appeal." Pamp. Laws, ch. 137.

Does this act change the eleventh section of the chapter, as above cited? If not, then the claim should be submitted to referees.

It is to be observed that the title of the act declares it to be in amendment of, and in addition to, the *third section;* and, consequently, so far as that may be regarded as indicative of its meaning, the act would seem intended not to affect the rest of the chapter, unless it necessarily must in order to make the act itself effective. By uniting the third section and the act into one section, it would read thus: If the administrator or any heir or creditor to an estate is dissatisfied with the allowance of any claim, he may appeal therefrom, by petition to the judge, filed in the probate office within thirty days after the acceptance of the report; and if the creditor, or his agent or attorney, is not present to take notice thereof, the judge shall order notice thereof to be given to the creditor. And in case the appeal is taken by an heir or creditor, he shall file in the probate office a bond, to the satisfaction of the judge, conditioned to indemnify the estate from any cost or damage that may accrue in the prosecution of said appeal.

These two sections, taken together, give the administrator and every heir and every creditor the right of appeal from the allowance of any claim, so that there may be as many appeals as there are creditors and heirs. In the present case, there were four appeals taken. Now must all of these agree to refer a claim before the same can he referred; and in case any one disagrees thereto, must a litigation be had in court? Or shall the eleventh section remain unchanged, and if the

creditor and administrator agree to refer the claim, shall it be referred ?   We think the latter, and that the act of December, 1844, does not affect the elevenrh section.   The object of the provision to refer was to expedite the settlement of estates, and that object would be almost entirely defeated, if the will of every creditor and every heir is to control the matter. So long as there is a litigation going on with reference to any of the claims, so long must the estate stand open, and it appears to us that if the Legislature had intended, by the act of 1844, to require that every heir and every creditor should agree to the reference as well as the administrator, they would have so said.   The provision would have been most natural, and one not likely to have been overlooked, had such been the intention or wish of the Legislature.   The eleventh section is so intimately connected with the third, in its provisions in the allowance of the appeal and the expeditious decision of the claim, that it would hardly have been left without amendment, had it not been designedly the intention not to amend it.   And, as before suggested, the title of the act itself would seem to show that the chapter, independent of the third section, was to remain unaltered; otherwise it would have said an act in amendment of the chapter, instead of this particular third section; or would have provided that all parts of the chapter, inconsistent with the act, should be repealed.

We think, further, that the construction we put upon these statutes is the only one that could be carried out without much perplexity and delay, and that it is that which is best calculated to advance the interests of all who have rights in unsettled estates.

But we do not think that the judge of probate is bound, in his appointment of referees, by the selection made by the administrator and creditor.   The statute does not, in terms, require it, and, as suggested in argument, there might be collusion between the administrator and creditor that might operate to the injury of others interested in the estate.   We

see no evidence of fraud or collusion in this case, and the reference agreed upon would appear to be fair; still the settlement of a claim is one in which all the heirs and creditors to an estate have an interest, and upon the question of the appointment of the referees, they should all have an opportunity to be heard, as well as to be heard before the referees.

The judge of probate has not the discretion, under the statute, to say whether the claim shall be referred or not. The statute is imperative upon him, and he must grant the rule, appointing whomsoever he may think advisable; and whenever there are others to be affected by the proceedings, he should designate and appoint the referees upon notice to and hearing of all concerned.

In this case, it will be the duty of the judge of probate to issue a notice to the administrator and creditor, and to all the appellants from the decision of the commissioner, and to all others who may be interested in the estate, that they may be heard, if they desire, in the designation and appointment of the referees.

The decree is, of course, to be reversed, and the judge of probate will proceed to appoint referees according to the rule here indicated.